# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **SERGIO ALPIZAR,** | § | |
| | § | |
| *Plaintiff,* | § | **SA-17-CV-00712-FB** |
| | § | |
| **vs.** | § | |
| | § | |
| **JOHN CHRISTNER TRUCKING, LLC,** | § | |
| **THREE DIAMOND LEASING, LLC,** | § | |
| **JACK EUGENE HEIN,** | § | |
| | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation and Order concerns the following four motions before the Court: Defendants' Objection and Motion to Strike the Testimony of Plaintiff Expert, Everett Dillman, Ph.D. [#31] and Defendants' Objection and Motion to Strike the Testimony of Plaintiff Expert, Kerry Nelson [#38], Defendants' Motion for Summary Judgment on Gross Negligence [#41], and Defendants' Motion for Summary Judgment on Plaintiff's "Direct" Claims of Negligence [#43]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#14], and the undersigned has authority to enter an order as to Defendants' Motions to Strike pursuant to 28 U.S.C. § 636(b)(1)(A) and a recommendation as to Defendants' Motions for Summary Judgment pursuant to 28 U.S.C. § 636(b)(1)(B).

In reviewing these motions, the Court has also considered Plaintiff's Response to Defendants' Objection and Motion to Strike the Testimony of Plaintiff Expert, Everett Dillman,

1

Ph.D. [#35], Plaintiff's Response to Defendants' Objection and Motion to Strike the Testimony of Plaintiff Expert, Kerry Nelson [#38], Plaintiff's Response to Defendants John Christner Trucking LLC and Three Diamond Leasing LLC.'s Motion for Summary Judgment on Plaintiff's "Direct" Claims of Negligence [#45], Plaintiff's Response to Defendants John Christner Trucking LLC and Three Diamond Leasing LLC.'s Motion for Summary Judgment on Gross Negligence [#46], Defendants' Reply on Summary Judgment on Gross Negligence Claims [#48], Defendants' Reply on Summary Judgment on "Direct" Negligence Claims [#49]. The Court held a hearing on the motions on January 29, 2019, at which all parties were present as represented through counsel.

Having considered the written filings before the Court, the arguments of the parties at the hearing, the record in this case, and the governing law, the Court will recommend that Defendants' Motion for Summary Judgment on Gross Negligence [#41] be **granted in part and denied in part** and recommend that Defendants' Motion for Summary Judgment on Plaintiff's "Direct" Claims of Negligence [#43] be **granted**. The Court will also order that Defendants' Motion to Strike the Testimony of Plaintiff Expert, Everett Dillman, Ph.D. [#31] be **denied** and Defendants' Objection and Motion to Strike the Testimony of Plaintiff Expert, Kerry Nelson [#38] be **granted in part and denied in part.**

## I. Background

This case involves a motor-vehicle collision between Plaintiff Sergio Alpizar and a commercial 18-wheeler allegedly operated by Defendant Jack Eugene Hein ("Hein") on behalf of Defendants John Christner Trucking ("JCT") and Three Diamond Leasing, LLC. (Orig. Pet. [#1-2] at 21.) Plaintiff originally filed this action in state court, and Defendants removed the Petition to this Court on July 31, 2017 on the basis of diversity jurisdiction [#1]. Plaintiff

thereafter filed a First Amended Complaint, which alleges claims of negligence against Hein, claims of negligence against JCT and Three Diamond Leasing based on a theory of *respondeat superior*, claims of "direct" negligence against JCT and Three Diamond Leasing for negligent hiring, training, supervision, retention, and entrustment of Hein, and claims of gross negligence against all Defendants [#5].  Defendants now move for summary judgment on Plaintiffs' claims of gross negligence against all Defendants [#43], for summary judgment on Plaintiffs' claims of "direct" negligence against Defendants JCT and Three Diamond Leasing, and for summary judgment on Plaintiff's claim of negligence based on a theory of *respondeat superior* against Three Diamond Leasing,[1] on the basis that Plaintiff was not employed by this entity [#41]. Defendants also move to strike two of Plaintiff's designated experts—Everett Dillman, Ph.D. [#31] and Kerry Nelson [#38].  The Court will first address the summary judgment motions and then the motions to exclude Plaintiff's experts.

## II.  Three Diamond Leasing's Motions for Summary Judgment

At the hearing, Plaintiff indicated that he does not oppose Defendants' motions for summary judgment on his claims against Three Diamond Leasing, as discovery revealed that this entity was not Plaintiff's employer and only a leasing agency.  In light of Plaintiff's lack of opposition, the undersigned will recommend the Court grant Defendants summary judgment on all of Plaintiff's claims against Three Diamond Leasing.

## III.  Hein and JCT's Motions for Summary Judgment

Only Defendants' motions for summary judgment on certain claims against Hein and JCT are contested. Defendants claim they are entitled to summary judgment as a matter of law on

---

[1] Defendants do not move for summary judgment on Plaintiff's claim of simple negligence against Hein or Plaintiff's claims against JCT based on a theory of *respondeat superior*.

Plaintiff's claims of gross negligence against Hein and JCT and on Plaintiff's claims of negligent hiring, training, supervision, retention, and entrustment against JCT. Defendants' motions for summary judgment should be denied as to Hein but granted as to JCT.

**A.      Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant

has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

**B.      Summary Judgment Record**

The undisputed summary judgment record establishes the following:  On May 3, 2017, Hein was traveling north on I-35 after making a delivery for JCT at an H-E-B in San Antonio. (Hein Dep. [#41-1] at 39:5–40:7.)  At the time of the accident, Hein was on his way to a Flying J to park his truck and wait for his next assignment from JCT.  (*Id.* at 39:1–51:18.)  Hein was driving in the right-hand lane of the interstate when Plaintiff passed him from the left.  (*Id.* at 53:10–25.)  Approximately thirty seconds to a minute and a half later, additional traffic merged from the left to right-hand lane to make an exit, causing the entire lane of traffic to brake.  (*Id.* at 57:10–24.)  Hein attempted to brake and veer his truck to the right shoulder, but he failed to break in time and rear-ended Plaintiff's vehicle.  (*Id.* at 71:3–21; Crash Report [#46-3] at 3.)  The Crash Report estimates the collision occurred at 4:57 p.m.  (Crash Report [#46-3] at 2.)

The records from Hein's personal cell phone, which he carries for business and personal use while on the job, display over 40 calls on May 3, 2017, ten of which were calls made by Plaintiff to various numbers in Sapulka, Oklahoma during the 10-minute period from 4:50 p.m. to 5:00 p.m.  (Cell Records [#46-1] at 10–11.)  None of these calls exceeded 3 minutes, and the majority of the calls were only one minute long.  (*Id.*)  Hein testified in his deposition that these calls were to JCT to report the accident; that he was not on his cell phone at the time of the collision or immediately prior to the collision; and that when he uses his cell phone on the job he always uses a Bluetooth hands-free device.  (Hein Dep. [#46-2] at 59:7–17; 61:2–22.)  There is no evidence that Hein was speeding at the time of the accident.  (*Id.* at 65:1–9.)

Hein has received several traffic citations in recent years: a speeding ticket in 2015 while driving his personal pickup truck; a speeding ticket in 2016 for the same; and a ticket in May 2013 for speeding and driving in a restricted lane while driving an 18-wheeler for a previous employer. (*Id.* at 27:1–28:15; Employee File [#46-5] at 33.) Besides the collision at issue in this lawsuit, Hein has never had any other accidents involving other vehicles. (Hein Dep. [#41-1] at 28:18–21.) A search of Hein's employment records indicates, however, that he received a company policy violation and unsatisfactory safety record during his work with a prior employer, Celadon Trucking Services, in early 2013 and another unsatisfactory safety record with a separate prior employer, Western Express, Inc., in later 2013. (Employee File [#46-5] at 19–20.)

It is also undisputed that Hein was given a driving test upon hiring by JCT and was required to watch a number of safety videos before being dispatched on his first drive. (Hein Dep. [#41-1] at 84:4–13, 85:16–86:1.) The videos covered how to approach an intersection, being attentive in traffic, maintaining safe driving distances, and appropriate speed. (*Id.* at 86:1–23.) Hein received a Certificate of Completion for JCT's Orientation Curriculum on May 8, 2015. (Employee File [#46-5] at 32.) Hein was given a drug test upon hiring, which was negative. (*Id.* at 38.) There is no evidence that Hein's employer provided him with ongoing training throughout his employment. (Nelson Dep. [#46-6] at 137:11–14.)

## C. Analysis

The evidence in the record generates material issues of fact that preclude granting Defendants' motions for summary judgment on Plaintiff's gross negligence claim against Hein, but the record establishes that Defendants are entitled to judgment as a matter of law on Plaintiff's gross negligence claim against JCT, as well as on Plaintiff's claim against JCT for negligent hiring, training, supervision, retention, and entrustment.

i.    <u>Gross Negligence of Hein</u>

Plaintiff alleges that Hein was grossly negligent in his operation of the 18-wheeler that rear-ended Plaintiff's vehicle on May 3, 2017.    (First Am. Compl. [#5] at ¶¶ 22–25.) Defendants contend that Plaintiff cannot establish his claim of gross negligence against Hein as a matter of law.  The undersigned disagrees; the summary judgment record raises a genuine issue of material fact on the elements of Plaintiff's gross negligence claim.

Texas law governs this diversity action.  *R & L Inv. Prop., L.L.C. v. Hamm*, 715 F.3d 145, 148–49 (5th Cir. 2013).  Under Texas law, a plaintiff is entitled to punitive damages upon a showing of gross negligence.  *Hansen v. Johns-Manville Prod. Corp.*, 734 F.2d 1036, 1040 (5th Cir. 1984).  To prevail on his claim of gross negligence against Hein, Plaintiff must prove both an objective and subjective component of his claim:   (1) that viewed objectively from the standpoint of Hein at the time of the events underlying this suit, the act or omission of Hein involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) Hein had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See* Tex. Civ. Prac. & Rem. Code § 41.001(11); *U–Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012).

Under the objective component, "extreme risk" is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury.  *U–Haul Int'l, Inc.*, 380 S.W.3d at 137 (citations omitted).  The objective prong (the degree of risk) is viewed from the time of the accident, not in hindsight.  *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 128 (Tex. App.—Beaumont 2001, no pet.).

As to the subjective component, an act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994), *superseded by statute on other grounds as stated in U-Haul Int'l, Inc.*, 380 S.W.3d 118. Only if the defendant's act or omission is unjustifiable and likely to cause serious harm can it be grossly negligent; i.e., the situation must be "highly dangerous." *Id.*; *Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993). Thus, a party cannot be liable for gross negligence when it actually and subjectively believes that circumstances pose no risk to the injured party, even if he or she is wrong. *U–Haul Int'l, Inc.*, 380 S.W.3d at 141 (citation omitted). A defendant's subjective mental state can be proven by direct or circumstantial evidence. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d at 23.

Plaintiff must prove these elements by clear and convincing evidence. *Diamond Shamrock Ref. Co., L.P. v. Hall*, 168 S.W.3d 164, 166 (Tex. 2005). The "clear and convincing" burden "means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Civ. Prac. & Rem. Code § 41.001(2). This is a high burden, as "punitive damages are proper only in the most exceptional cases." *Transp. Ins. Co.*, 879 S.W.2d at 18.

Defendants contend there is no evidence in the record of any objectively extreme degree of risk or Hein's subjective awareness of and conscious indifference to such risk, such as speeding, reckless driving, or drug or alcohol use; rather, the evidence simply shows that Hein attempted to brake but did not brake fast enough and read-ended Plaintiff's vehicle. Plaintiff responds that the cell phone records establish Hein made a total of seven phone calls between 4:51 p.m. and 4:57 p.m. (approximately one call per minute) leading up to and at the time of the

accident and this posed an extreme degree of risk of which Hein was subjectively aware in terms of his attention to driving.

"Texas courts have repeatedly made clear that whether a driver is operating a car or truck, acts that support a finding of ordinary negligence, such as a party's failure to obey traffic laws, will not support a finding of gross negligence." *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 656 (S.D. Tex. 2016) (collecting cases). There must be some additional act giving rise to an "extreme degree of risk" to harm. *U–Haul Int'l, Inc.*, 380 S.W.3d at 137.

There are surprisingly few cases addressing whether the use of a cell phone at the time of a motor-vehicle accident creates an extreme degree of risk that could support a claim of gross negligence. The only case involving a motor vehicle accident and cell-phone use cited by the parties in their briefing is *Braun v. Clean Harbors Envtl. Servs., Inc.*, No. 1:14-CV-524, 2016 WL 7551118 (E.D. Tex. Jan. 25, 2016). In *Braun*, the court denied Defendants' motion for summary judgment on gross negligence under somewhat similar facts to this case. In *Braun*, the plaintiff was driving a personal automobile; the defendant was operating an 18-wheeler and was talking on his cell phone at the time of the crash. *Id.* at *1. The cause of the accident was determined to be an unsafe lane change, which resulted in the defendant striking the plaintiff's automobile. *Id.* The defendant in *Braun* had a history of safety violations with his current employer, but violations much more egregious than the traffic citations and other violations here: he had received an overweight ticket for violating the Federal Motor Carrier Safety Act; had been disqualified by the State of Louisiana as a commercial driver; had been previously terminated due to his unsafe driving record; and had been prohibited from driving solo upon his rehiring until he completed training. *Id.* On the day of the accident, only one month after his

rehiring, the defendant was driving solo and had not received any written approval allowing him to do so. *Id.*

The *Braun* court concluded that a fact question remained as to whether the driver was grossly negligent, relying on evidence that the defendant was using his cell phone at the time of the accident, had previously received training materials regarding the adverse effects of driving while using a cell phone, had a history of serious safety violations, and had not received written approval granting him solo driving privileges at the time of the accident. *Id.* at *4–5. In doing so, the court relied on a case from the Texas Court of Criminal Appeals, *Montgomery v. State*, 369 S.W.3d 188 (Tex. Crim. App. 2012), which reversed an intermediate appellate court that had overturned a jury verdict, reinstating a conviction for criminally negligent homicide. *Id.* at *5. The Court of Criminal Appeals held that the state had introduced sufficient evidence at trial that the defendant ought to have been aware of a risk of distraction created at least in part by talking on a cell phone while driving. *Id.* The *Braun* court concluded that *Montgomery* "stands for the proposition that a jury may consider whether cell phone usage while driving creates unsafe driving conditions that involve an extreme degree of risk of which the driver is subjectively aware." *Id.*

Other courts have also concluded that cell-phone usage at the time of a motor-vehicle accident can raise a fact issue on the question of whether a driver's conduct involved an extreme degree of risk. In *Olivarez v. Get Cargo, Inc.*, the court also denied summary judgment on a claim of gross negligence, where there was evidence of the driver's cell phone use and speeding, but the record was unclear as to whether a hands-free device was used. No. SA-13-CA-391-OLG-HJB, 2014 WL 12588337, at *7 (W.D. Tex. Sept. 25, 2014), *report and recommendation adopted sub nom. Olivarez v. Bozhinov*, No. SA-13-CA-391-OLG, 2014 WL 12588338 (W.D.

Tex. Oct. 21, 2014). In doing so, the court noted that hand-held mobile telephones, without use of a hands-free device, are forbidden for use by commercial drivers. *Id.* (citing 49 C.F.R. § 392.82).

Similarly, in *Gaddis v. Hegler*, the court held that there was a genuine issue of material fact concerning whether the defendant was using a cell phone at or near the time of the accident and whether such usage created a distraction that resulted in the defendant's speeding and failure to stop for a red light. No. 3:10-CV-249-CWR-LRA, 2011 WL 2111801, at *4–5 (S.D. Miss. May 26, 2011). In doing so, the court acknowledged the high threshold for the entitlement of a jury instruction on punitive damages but nonetheless denied summary judgment in favor of allowing the evidence to develop at trial. *Id.* The court expressly noted that the denial of summary judgment was without prejudice to the court reconsidering the issue at trial on a more robust evidentiary record in the context of a Rule 50 motion. *Id.*

The Court should take the same approach here. The undisputed evidence in this case establishes that Hein made an unusually high number of calls in the ten-minute period of time immediately surrounding the estimated time of the accident underlying this case. His cell-phone records specifically reflect an outgoing call at 4:57 p.m., the estimated time of the accident on the crash report. (Crash Report [#46-3] at 2; Cell Records [#46-1] at 10–11.) Although Hein testified that these calls were made after the accident to inform JCT of the crash, this statement has not been corroborated by any other evidence, and a jury could find his testimony not credible in light of the objective cell phone records. Moreover, it will be up to a jury to decide whether it believes Hein's testimony that he always uses a hands-free device when using his cell phone while driving. Finally, Hein's record of an unsafe driving history with previous employers is additional evidence the jury could consider in evaluating the degree of risk presented by his cell

phone usage. In summary, the evidence raises a genuine dispute as to whether Hein was in fact on his phone leading up to and at the time of the accident and whether his excessive cell-phone usage created an extreme degree of risk of which he was subjectively aware. To reiterate, a denial of Defendants' motion for summary judgment on Plaintiff's claim of gross negligence against Hein does not preclude Defendants from re-urging this argument in a Rule 50 motion during trial, nor foreclose the possibility of the District Court granting any Rule 50 motion.

ii.    <u>Gross Negligence of JCT</u>

Plaintiff alleges that JCT was grossly negligent with respect to various acts causing Plaintiff's injuries. (First Am. Compl. [#5] at ¶¶ 22–25.) Defendants contend that Plaintiff cannot establish his claim of gross negligence against JCT as a matter of law. The undersigned agrees.

Plaintiff advances two theories of JCT's negligence—negligence based on a theory of *respondeat superior* and negligence for its own acts of hiring, training, supervision, retention, and entrustment of Hein. (*Id.* at ¶ 14.) Texas law recognizes the theory of *respondeat superior*, under which "an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of his employment." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007). Plaintiff cannot establish gross negligence as to either theory.

To impose punitive damages on an employer for the acts of its employee, there must be clear and convincing evidence that JCT itself committed gross negligence by (1) authorizing or ratifying the grossly negligent actions of Hein or (2) a vice principal (corporate officer, supervisors, etc.) committing separate grossly negligent acts. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). Plaintiff has not proffered any evidence that any officer of JCT

authorized or ratified Plaintiff's cell phone usage on the day of the accident.  Nor is there evidence, let alone clear and convincing evidence, to support the allegation that JCT itself committed acts involving an extreme degree of risk and had subjective awareness of such risk. *See U–Haul Int'l, Inc.*, 380 S.W.3d at 137.

Plaintiff's theory of gross negligence as to JCT is its alleged failure to continually train Hein and failure to supervise his cell phone usage.  In support of this theory, Plaintiff directs the Court to Hein's driver qualification file, which only documents training upon hiring and none thereafter.  (Employee File [#46-5] at 32; *see also* Hein Dep. [#41-1] at 84:4–13, 85:16–86:1 (discussing initial training provided by JCT).)  Plaintiff also cites to the deposition of its designated expert, Kerry Nelson (the subject of one of the *Daubert* challenges at issue, *see infra*), who stated in his deposition that a reasonably prudent transportation company would institute ongoing safety training in order to establish a culture of safety within the corporation.  (Nelson Dep. [#46-6] at 137:11–14.)  Even if the challenged testimony of Nelson were admissible, this evidence is insufficient to support a claim of gross negligence.

The cases cited by Plaintiff in support of its position that this evidence raises a genuine fact issue on gross negligence are readily distinguishable from the evidence before the Court.  In *Rayner v. Dillon*, a Texas appellate court affirmed a trial court's finding that an employer knew of the extreme risk of allowing one of its drivers to continue to drive despite his repeated violations for driving in excess of the eleven-hour limit prescribed by federal regulations to prevent driver fatigue.  501 S.W.3d 143, 156–57 (Tex. App.—Texarkana 2016).  The evidence before the jury was that the employer was audited and found to be "fixing the books and falsifying the records" and fined "thousands of dollars" for the 48 violations identified by the auditor.  *Id.* at 154.  The employer conceded that it never admonished or disciplined the driver at

issue for his log-book violations, even though he was the "second-worse perpetrator" in the fleet and had been involved in two accidents before the audit. *Id.* The court concluded that this "evidence was sufficient to permit the jury to form a firm belief or conviction that [the employer] was aware of the extreme risk of serious injury [the driver's] fatigued driving posed to others on the road, yet continued to not only permit, but to tacitly encourage, [the driver] to drive in such a state." *Id.* at 156.

There is no comparable evidence in the record that JCT knew that Hein was using his cell phone in a manner that placed the public at an extreme risk of harm, such as failing to use his hands-free device or making excessive phone calls throughout his shifts, and yet chose to disregard it. A general failure to create a "culture of safety" through a lack of ongoing training may in some circumstances create a fact issue on negligence but is not clear and convincing evidence of gross negligence.

The only other case cited by Plaintiff is a Texas appellate decision that did not even involve a claim of gross negligence. *See JBS Carriers, Inc. v. Washington*, 513 S.W.3d 703, 710 (Tex. App.—San Antonio 2017) (holding that jury's finding of direct negligence against JBS for failure to train drivers on blind spot was supported by the evidence). More importantly, Plaintiff failed to inform the Court that this holding was, in fact, reversed by the Texas Supreme Court, which held that there was no evidence to support a claim that the lack of training was a proximate cause of the plaintiff's injuries. *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 842 (Tex. 2018). Plaintiff has failed to carry its burden to demonstrate that there is sufficient evidence in the record from which a jury could find by clear and convincing evidence that JCT's failure to provide ongoing training or supervision with respect to Hein's cell-phone usage was grossly negligent or, as *JBS Carriers* demonstrates, a proximate cause of the accident at issue.

The Court should grant Defendants' motion for summary judgment as to the gross negligence of JCT.

    iii.    <u>Direct Negligence of JCT</u>

The Court should also grant Defendants' motion for summary judgment as to the direct negligence of JCT based on its alleged negligent hiring, training, supervision, retention, and entrustment of Hein.[2] (Pl.'s Am. Compl. [#5] at ¶ 14.) "[T]he Texas Supreme Court has not ruled definitively on the existence, elements, and scope of the torts of negligent hiring, supervision, training, or retention." *Sanchez v. Transportes Internacionales Tamaulipecos S.A de C.V.*, No. 7:16-CV-354, 2017 WL 3671089, at *2 (S.D. Tex. July 20, 2017) (citing *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010)). "Regardless, to the extent that these are viable claims under Texas law, they are based on an employer's direct negligence rather than its vicarious liability." *Id.* (citations omitted).

Texas law "instructs that where a plaintiff alleges ordinary (rather than gross) negligence, and the employer stipulates to its vicarious liability for its employee's negligence, a respondeat superior claim and the type of direct negligence claims asserted here are 'mutually exclusive' means of recovering from the employer." *Id.* at *2 (collecting cases); *see also Ochoa v. Mercer Transp. Co.*, No. 5:17-CV-1005-OLG, 2018 WL 7505640, at *3 (W.D. Tex. Dec. 10, 2018) (granting summary judgment as to direct negligence claim where employer stipulated to vicarious liability).

JCT does not dispute that Hein was acting in the course and scope of his employment with JCT at the time of the accident underlying this suit, and in doing so has stipulated to its

---

[2] Plaintiff conceded at the January 29, 2019 hearing that there was no negligent entrustment by JCT and focused on the allegations of negligent hiring, training, and supervision.

vicarious liability for any negligent acts or omissions of Hein. (Mot. for Summ. J. [#43] at 3.) The undersigned is also recommending summary judgment be awarded to JCT on Plaintiff's claims of gross negligence. Accordingly, if a jury were to conclude that Hein was negligent and that his negligence proximately caused Plaintiff's injuries, JCT would bear vicarious liability for his negligence regardless of any inadequacy in its hiring, training, supervision, or retention of him as an employee. *Ochoa*, 2018 WL 7505640, at *3. Further, if the factfinder determines that Hein was not negligent, then any negligence on the part of JCT in its hiring, supervision, training, or retention of Hein could not have served as the proximate cause of Plaintiff's damages. *Sanchez*, 2017 WL 3671089, at *2. Thus, JCT is entitled to summary judgment on Plaintiff's claims against JCT for direct negligence as well.

### IV. Defendants' Motions to Exclude Experts

Defendants also move to exclude two of Plaintiff's designated experts—economist Everett Dillman [#31] and trucking safety expert Kerry Nelson [#38]—under the standards set forth in Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Again, the undersigned has authority to enter an order as to these motions pursuant to 28 U.S.C. § 636(b)(1)(A). Defendants' *Daubert* challenge as to Dillman is denied, and their challenge as to Nelson is granted in part.

### A.    Legal Standard

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that trial judges must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. Subsequent to *Daubert*, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness "qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the expert's scientific, technical, or other specialized knowledge

will help the trier of fact to understand the evidence or to determine a fact issue, (2) the testimony is based upon sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical" analysis and other "specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). A district court enjoys broad discretion in determining the admissibility of expert testimony, and such decisions will not be disturbed on appeal unless a ruling is "manifestly erroneous." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997).

**B. Analysis**

i.  <u>Everett Dillman</u>

In his expert report, Dillman opines on Plaintiff's economic damages based on an impaired earning capacity due to the injuries he sustained in the accident underlying this lawsuit. (Dillman Expert Report [#16-2].) Defendants challenge Plaintiff's designation of Dillman, an economist, on the basis of reliability. Defendants concede that Dillman is qualified to render an opinion on Plaintiff's economic damages and that his theories are well established; Defendants simply argue that Dillman did not apply these theories in a reliable manner, i.e., that his methodology was flawed, and therefore, that he should not be permitted to testify as an expert on these matters at trial.

Dillman's expert report demonstrates that he calculated the present value of Plaintiff's future earning capacity by taking the average of three years of Plaintiff's earnings—2015, 2016,

and 2017—and multiplying it by Plaintiff's life expectancy based on work-life tables suggesting someone of Plaintiff's age, education, and sex would live to age 70. (*Id.* at 2.) Dillman's expert report also includes an opinion as to the value of Plaintiff's lost fringe benefits at the private industry average, lost household services, and future medical care costs. (*Id.* at 4, 8, 10.) In his written response and at the hearing, Plaintiff stipulated he would not offer at trial Dillman's opinion on present value of household services and future medical care and costs. Thus, the contested opinions are only Dillman's opinions on Plaintiff's future earning capacity to age 70 and the value of lost fringe benefits. Dillman stated in his deposition that he does not intend to testify regarding Plaintiff's ability to work; i.e., he is not testifying as a vocational expert. (Dillman Dep. [#31-1] at 74:2–11.)

Defendants challenge the reliability of Dillman's opinions on Plaintiff's earning capacity, contending that Dillman selectively chose to evaluate Plaintiff's earning capacity based on the highest of three years of income, when he was provided W-2 records for Plaintiff dating back to 2006. Defendants also complain that his opinions are generally unreliable and without foundation, because Plaintiff has not established—through the testimony of a vocational expert or otherwise—that his earning capacity is currently impaired at all. Defendants claim there is some evidence that Plaintiff has continued to work since the accident and received a pay increase.

As to Dillman's decision to average the three years of wage information, this calculation method is not *per se* unreliable, particularly in light of the fact that Dillman chose to use the most recent three years. Defendants may certainly cross examine Dillman on why he averaged three years of wage information and can argue that the window is misleading. As to Defendants' challenge based on Plaintiff's apparent lack of current impairment, the Court agrees with

Defendants that Dillman will only be permitted to tesfify on Plaintiff's economic damages related to any alleged reduced earning capacity if Plaintiff at trial first lays the foundation that his earning capacity has, in fact, been impaired due to the accident. If the evidence establishes the contrary—that Plaintiff has continued to work at the same or a higher pay rate than prior to the accident—Dillman will not be permitted to testify because his testimony would not be relevant or assist the jury in evaluating his damages. This is not a basis for prophylactically excluding Dillman's testimony on this topic at this stage of the proceedings, however. Defendants may bring a motion in limine before the Court or contemporaneously object on relevancy grounds if the appropriate foundation has not been established regarding Plaintiff's earning capacity.

Regarding Dillman's opinions on fringe benefits, Defendants argue that there is no evidence that Plaintiff ever received fringe benefits such that this testimony would assist the jury. This challenge is also better addressed through a motion in limine or a contemporaneous objection for lack of foundation if the evidence presented at trial does not establish the existence of such benefits. In sum, for the foregoing reasons, Defendant's motion to exclude Dillman is denied.

      ii.    <u>Kerry Nelson</u>

Defendants seek to exclude the testimony of expert Kerry Nelson also on the basis of reliability. This motion is granted in part.

Nelson is a trucking safety expert and former highway patrol officer with the Arizona Department of Public Safety who has been designated to testify as to Hein's failure to be attentive and to maintain safe following distance and as to the duty of JCT to provide its drivers

with ongoing safety training.[3]  The parties agreed at the hearing that if the Court were to dismiss the claims against JCT for direct negligence, Nelson's testimony on JCT's duty to train its drivers would no longer be relevant and assist the jury.  Because this is the undersigned's recommendation to the Distict Court, this order only considers Nelson's opinion as to Hein's failure to be attentive, to keep a safe following distance, and to take proper evasive action as the cause of the accident at issue.[4]

Defendants maintain that Nelson's opinions are unreliable because they have not been tested or peer reviewed and merely constitute his subjective interpretation of the events leading up to the accident.  Additionally, Defendants argue that Nelson improperly attempts to testify as to accident reconstruction, when he has not been designated as an accident reconstructionist, and he has conceded that he is not qualified to give testimony regarding causation because he did not do any actual scientific reconstruction in this case; did not inspect or take pictures of the vehicles; and did not go to the scene, interview witnesses, or make any calculations or analysis as to speed.  (*See* Nelson Dep. [#38-1] at 48, 66, 89, 98–99, 109.)  Rather, he admits that he simply reviewed the police report and Hein's deposition, as well as the Federal Motor Carrier Safety Regulations and the Texas Commercial Motor Handbook regarding the need to maintain a safe following distance.  (*Id.* at 54, 72, 74.)

---

[3]  Nelson's report also includes opinions about the legal status of Hein with respect to his employment with JCT.  Because JCT has stipulated to Hein's actions being in the course and scope of his employment with JCT, this challenge is moot.

[4]  If the District Court rejects the undersigned's recommendation as to the direct negligence claims against JCT, Defendants may renew their challenge to Nelson's testimony regarding JCT's duty to provide ongoing training outside the deadlines set forth in the Court's Scheduling Order.

The Court agrees that Nelson is not qualified to testify on accident reconstruction in this case, and Nelson himself essentially concedes as much in his deposition. Accordingly, Nelson is not permitted to testify regarding his opinions that (1) Hein failed to keep a safe following distance behind Plaintiff; (2) Hein ignored the recommendation concerning a safe following distance behind another vehicle; (3) Hein failed to engage proper and timely evasive action prior to the collision; and (4) Hein was responsible for the collision and injury of Plaintiff. These opinions constitute the majority of Nelson's opinions as summarized in his expert report. However, Nelson is permitted to testify as a trucking safety expert on 18-wheelers generally, including safe following distances for 18 wheelers and protocols to avoid a collision when operating an 18-wheeler, as such testimony may assist the jury in understanding standards for safely operating an 18-wheeler, standards that are likely not within a typical juror's general knowledge.

### V.  Conclusion, Recommendation, and Order

In summary, having considered Defendants' motions, the various responses, replies, and supplements thereto, the summary judgment record, and the arguments of counsel at the hearing, the undersigned **recommends** that Defendants' Motion for Summary Judgment on Gross Negligence [#41] be **DENIED IN PART AND GRANTED IN PART,** and Defendants' Motion for Summary Judgment on Plaintiff's "Direct" Claims of Negligence [#43] be **GRANTED** as follows:

- Defendants' motions for summary judgment with regard to Plaintiff's claims against Defendant Three Diamond Leasing should be **GRANTED**;

- Defendants' motions for summary judgment with regard to Plaintiff's claims against Defendant JCT for direct negligence and gross negligence should be **GRANTED**;

- Defendants' motion for summary judgment with regard to Plaintiff's claims for gross negligence against Defendant Hein should be **DENIED** and these claims, as well as

Plaintiff's claims against Defendant Hein for simple negligence and against Defendant JCT as to *respondeat superior* liability, should proceed to trial.

**IT IS ALSO ORDERED** that Defendants' Objection and Motion to Strike the Testimony of Plaintiff Expert, Everett Dillman, Ph.D. [#31] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Objection and Motion to Strike the Testimony of Plaintiff Expert, Kerry Nelson [#38] is **GRANTED IN PART** as stated herein. In all other respects, the motion is denied.

## VI. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 16th day of April, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE