UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**SERGIO ALPIZAR,**

    *Plaintiff*,

v.                                                                Case No. SA-17-CV-0712-JKP

**JOHN CHRISTNER TRUCKING,**
**LLC, et al.,**

    *Defendants*.

## ORDER REGARDING REQUEST TO EXCLUDE (OR OBJECTION TO) EXPERT TESTIMONY OF DR. ANTHONY OWUSU

At the final pretrial conference for this case held on August 5, 2021, the parties agreed to submit relevant transcripts or videos to enable the Court to determine whether there is an adequate foundation for admitting testimony on causation from Dr. Anthony Owusu. Both parties have made submissions and arguments, *see* ECF Nos. 147 and 148, and the Court construes ECF No. 148 as Defendants' Request to Exclude (or objection to) the Testimony of Dr. Anthony Owusu. Defendants seek to exclude opinion testimony from Dr. Owusu on the issue of causation. The issue is ripe for resolution. Based on the briefing, the deposition transcript of Dr. Owusu, and arguments of counsel, the Court partially grants Defendants' Request (sustains the objection) and will not allow Dr. Owusu to testify as a biomechanical expert in this case. The Court otherwise overrules the objections.

This is a negligence case that arises from a May 3, 2017 automobile accident. Plaintiff alleges he was injured in the accident and sought treatment from Dr. Owusu, an orthopedic surgeon. Dep. Owusu (ECF No. 148-1) 72:7-12. Dr. Owusu has five years of experience. *Id*. He earned a bachelor's degree from University of Maryland Eastern Shore and a medical degree from Howard University. *Id*. 6:5-11. He completed his surgical or orthopedic residency at Virginia

Commonwealth University and a spine fellowship at the Texas Back Institute in Plano, Texas. *Id*. He sees approximately 600 patients per year and performs approximately 20 surgeries per month. *Id*. 8:5-13.

On January 31, 2018, Dr. Owusu met Plaintiff for an initial consultation for complaints related to the May 3, 2017 motor vehicle accident. *Id*. 10:23-25; 11:1-12. Plaintiff presented with complaints of neck and lower back pain, which radiated down his legs. *Id*. 13:20-25; 14:1. Dr. Owusu noted Plaintiff completed physical therapy and received four injections (two cervical injections and two lumbar injections). *Id*. Dr. Owusu received (and reviewed) Plaintiff's MRI findings and examined him. *Id*. 33:16-36:25. Dr. Owusu performed a laminectomy and decompression surgical procedure at Plaintiff's l4-5. *Id*. at 49-54. Dr. Owusu opined that, based on a reasonable medical probability, Plaintiff's pain (which was the reason for his surgery) began after the May 3, 2017 accident. *Id*. 60:5-25.

Dr. Owusu testified that his opinion was based on Plaintiff's oral clinical history, his examination of Plaintiff, and review of Plaintiff's MRI findings. *Id*. 61:1-12. He correlated Plaintiff's MRI findings with objective medical findings from his examination to develop a treatment plan for Plaintiff. *Id*. Dr. Owusu testified that obtaining a patient's clinical history, conducting an examination, and correlating them with objective MRI findings are important in diagnosing a spinal injury. *Id*. 11:23-12:6.

Dr. Owusu did not review any records regarding accidents or injuries prior to the May 3, 2017 accident. *Id*. 90:24-91:4. Plaintiff did not tell Dr. Owusu about prior accidents involving back pain. *Id*. 99:11-14.

Defendants contend Dr. Owusu's causation opinion is unreliable because he had no knowledge of, and to failed to consider, an April 9, 2015 automobile accident in which Plaintiff

suffered injuries similar to his injuries in this case. Defendants argue that Dr. Owusu did not consider and exclude other possible causes of Plaintiff's injuries.

**A. Applicable Law**

Rule 702 of the Federal Rules of Evidence addresses admissibility of expert testimony. As amended in 2000, with non-substantive, stylistic modifications in 2011, Rule 702 allows a witness "who is qualified as an expert" to testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The amended rule, "reflects the Supreme Court's decisions in *Daubert [v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)] and its progeny emphasizing the district courts' broad latitude in weighing the reliability of expert testimony for admissibility." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (citing *Daubert*, 509 U.S. at 591; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999)).

Rule 702 and the *Daubert* decision thus provide the analytical framework for determining the admissibility of expert testimony. In fact, "Rule 702 encompasses the *Daubert* inquiry, and also gives district courts flexibility in determining whether an expert's testimony is reliable." *Matosky v. Manning*, 428 F. App'x 293, 297 (5th Cir. 2011) (per curiam) (citing Fed. R. Evid. 702 advisory committee note (2000 amend.) (explaining that "[t]he amendment . . . provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony," and includes but is not limited to the *Daubert* factors)). District courts are required to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Daubert*,

509 U.S. at 589. Initially, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). After the court determines the expert is qualified, it must follow *Daubert* to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

Whether an expert's opinion is reliable, involves a preliminary evaluation of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id*. at 592-93.

> *Daubert* set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested---that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

Fed. R. Evid. 702 Advisory Committee Notes (2000 amend.); *accord Daubert*, 509 U.S. at 593-94; *Burleson v. Tex. Dep't of Crim. J.*, 393 F. 3d 577, 584 (5th Cir. 2004).

In *Kumho*, the Court expanded the "gatekeeping function . . . to all expert testimony," scientific and otherwise. 526 U.S. at 147. Regardless of the type of expert testimony, "the test of reliability is 'flexible.'" *Id*. at 141. It adapts to the particular circumstances underlying the testimony at issue. *See id*. at 150. The focus of the Court's reliability analysis "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.

In deciding whether the expert's opinion is relevant, the Court must determine if expert's

testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Evidence is relevant if : (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (altering format).

In analyzing the admissibility of expert testimony, courts must always be mindful of the jury's role in resolving disputes between contrasting expert opinions. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). The proponent of the expert testimony must establish by a preponderance of the evidence that the contested expert testimony is admissible. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc); *see also* Fed. R. Evid. 104.

**B. Analysis**

To the extent Defendants argue Dr. Owusu is not qualified to offer a causation opinion in this case, that challenge fails. Dr. Owusu is qualified by his education, training, and experience as an orthopedic spine surgeon to opine on the cause of Plaintiff's injury and the need for surgery to treat his medical condition. Dr. Owusu conducted a post-residency fellowship and received additional specialized training related to the human spine. He has five years of experience as an orthopedic surgeon, sees approximately 600 patients per year, and performs approximately 20 surgeries per month.

On the other hand, although it does not appear that Dr. Owusu has offered an opinion that requires biomechanical/engineering education or training, Defendants' objection on that basis is well taken. Accordingly, to the extent Dr. Owusu intends to render any purported biomechanical opinion, the Court sustains the objection and excludes any such testimony.

Defendants also object that Dr. Owusu did not know about a prior car accident that resulted in similar injuries to Plaintiff. But lack of knowledge of one prior automobile accident is

insufficient of itself to exclude a treating doctor's causation opinion. *See Lilley v. Home Depot U.S.A., Inc.*, 567 F. Supp. 2d 953, 957 (S.D. Tex. 2008) (denying motion to exclude even with a lack of knowledge of a prior accident and other matters). Courts, furthermore, should not exclude a doctor's expert testimony "under *Daubert* solely on the ground that his causation diagnosis was based only on his patient's self-reported history." *Id.* (quoting *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir. 2000)). That a causation opinion is based solely on a self-reported history merely affects the weight of such opinion and does "not require its exclusion." *Id.* (citing *Amigo Broadcasting, LP v. Spanish Broadcasting Sys., Inc.*, 521 F.3d 472, 485 (5th Cir. 2008) (recognizing that "criticism of the bases and sources" of an opinion affects the weight of an opinion, which "should be left for the *jury's* consideration") (quoting *Viterbo*, 826 F.2d at 422)).

Although "medical causation experts must have *considered and excluded* other possible causes of injury," such requirement "does not necessitate an exhaustive search that forces an expert to 'disprov[e] or discredit[ ] every possible cause other than the one espoused by him,' but, an expert must be aware of the plaintiff's pertinent medical history." *McNabney v. Lab. Corp. of Am.*, 153 F. App'x 293, 295 (5th Cir. 2005) (per curiam) (quoting *Viterbo*, 826 F.2d at 424). An expert cannot "simply pick[ ] the cause that is most advantageous to [the plaintiff's] claim," while disregarding relevant evidence. *Viterbo*, 826 F.2d at 424. Over the years, "*Viterbo* has come to stand for the proposition that, '[w]ithout more than credentials and a subjective opinion, an expert's testimony that it is so is not admissible.'" *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 139 (5th Cir. 1996) (Garza, J. concurring) (omitting some internal quotation marks).

This case presents much more than mere credentials and a subjective opinion from Dr. Owusu. Dr. Owusu obtained Plaintiff's medical history, reviewed MRIs, and examined him. His

6

causation opinion was based on information gleaned from these three sources. Dr. Owusu's lack of knowledge about the April 2015 automobile accident does not make his causation opinion inadmissible. *See Lilley*, 567 F. Supp. 2d at 958. Various matters, including "[d]isputes as to the strength of [a doctor's] credentials" and faults in a particular methodology such as "differential etiology (which requires listing possible causes, then eliminating all causes but one) . . . go to the weight, not the admissibility, of his testimony." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir.1995). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

For the foregoing reasons, the Court grants Defendants' request to exclude in part, thus sustaining Defendants' objections, in part, and will not allow Dr. Owusu to testify as to any biomechanical opinion. It otherwise overrules the objections and denies the request to exclude.

**It is so ORDERED.**

**SIGNED this 22nd day of October 2021.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**